Giachino Capuano *vs.* American Locomotive Works.

JUNE 28, 1910.

Present:   Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1) *Negligence. Declaration Unsupported by Testimony. Assumed Risks.*
Plaintiff, an "iron melter" of ten years' experience, was engaged in firing the

cupola from the second floor of the factory, the fuel being brought to said floor by an elevator. The elevator was operated by a wire cable, and while plaintiff was using it in carrying materials the elevator was carried so far that its floor was a few inches above the floor of the second story, and in lowering it, it jammed, and before it was stopped the wire cable looped up about the "drum" and out of the grooves prepared for it to lie in. Some attempt was made to prevent the falling of the car, by wedging it, and the plaintiff, either by the order of the foreman or of his own motion, attempted to place the cable in the grooves on the "drum," and while so employed his hand was caught, by a sudden tightening of the cable, and injured. Plaintiff alleged that the accident was due to the sudden starting of the elevator mechanism, due to either the absence of, or by reason of a worn, bushing in the loose pulley, causing the belt to run on the tight pulley:—

Held, that plaintiff failed to prove that either of said defects caused the tightening of the cable, or that either of such defects existed.

Held, further, that, where plaintiff alleges negligence in certain particulars as the sole foundation of the action, negligence in these particulars must be proved to sustain the action.

Held, further, that it appeared from the testimony that the lack of the bushing, or the presence of a worn bushing, could not have been the proximate cause of the starting of the mechanism.

Held, further, that the testimony showed that the tightening of the cable was not caused by the starting of the elevator mechanism, and that it was mechanically impossible to have been so caused.

Held, further, that plaintiff's declaration was inconsistent with the facts and in no view of the matter could he be allowed to recover.

Held, further, that when he attempted to replace the cable, with his knowledge of the facts, he assumed the risk.

(2)    *Verdict Approved by Trial Judge in Case Where Evidence Fails to Support Declaration.*

Where the verdict of a jury is not based upon their conclusions on conflicting testimony, but upon an entire misconception of the facts of the case, and in a case where the declaration is unsupported by the testimony, the court can not give the approval of the verdict by the justice presiding at the trial the force which is given it under the rule in *Wilcox* v. *R. I. Co.*, 29 R. I. 292.

TRESPASS ON THE CASE for negligence. Heard on exceptions of defendant. Plaintiff to show cause why judgment should not be entered for defendant.

SWEETLAND, J. This is an action of trespass on the case for negligence, to recover damages for personal injuries.

The plaintiff was an iron melter employed in the defendant's iron foundry. He had been in the employ of the defendant for ten years previous to the time of the accident which is the

subject of this suit.  It was the plaintiff's duty, assisted by other men, to charge and fire the cupola in said foundry. The fuel and iron were placed in the cupola from the second floor, and an elevator was provided by the defendant to carry this fuel and iron to the second floor from the yard and ground floor of the foundry.  · This elevator was placed beside the outer wall of the foundry and was open to the yard, and also to the ground floor and the second floor of the foundry.  The mechanism which operated  this elevator was within the foundry building, was near the opening to the elevator from the ground floor, and was suspended between the ground floor and the second floor of the foundry.  The elevator-car was not enclosed, and consisted of a platform with a yoke frame formed by two side standards attached to the outer edge of the platform and to a cross-beam overhead.  The car was connected with the driving mechanism of the elevator, and was raised or lowered by means of a wire cable attached to the middle of the overhead cross-beam of the car, which cable passed up and over a train of pulleys at the top frame of the elevator shaft at the level of the ceiling of the second story of the building and thence into the building over pulleys and down through the second floor of the foundry to a drum suspended between the ground and second floors, over which drum the cable was wound to raise the car and unwound to lower the car.  The drum was thirty-four inches in diameter and had grooves on its winding-surface for the cable to lie in.

On the day of the alleged accident the plaintiff and his helpers were using the elevator to carry materials to the cupola. On one of its trips the elevator, with its load, was carried up so far that the floor of the car was a few inches above the floor of the second story.  The mechanism was started to lower the car, that the two floors might be on the same level, but the car stuck fast, or jammed, in its runway and was not lowered.  Before the mechanism was stopped, the wire cable, which had been run off the drum, not being taken up by the lowering of the car, looped up in a number of loops about the drum, out of the grooves, the loops being five or six inches from the surface of the

drum.  The foreman of the foundry was notified.  Witnesses for the plaintiff testify that the foreman put wedges under the car and also directed two of the plaintiff's helpers, the D'Arezzo cousins, to hold it in place with bars.  The foreman testifies that the plaintiff himself had put iron plates under the car to hold it.  It is clear that some attempt was made to prevent the falling of the car, and that the plaintiff and his helpers all understood the possibility that the car might release itself from the jam and fall while the cable was unwound from the drum, and understood the danger that would result therefrom.  The foreman testifies that he directed the plaintiff and his helpers not to touch anything connected with the elevator, and that he went at once to notify the repair gang, which the defendant employed for such purpose, to put the elevator in order.  The plaintiff testified that the foreman directed him to replace the cable upon the drum and held the ladder for him to do so.  There is no question that the plaintiff, by the order of the foreman or of his own motion, did attempt to place the cable in the grooves on the drum, and while so employed his hand was caught by a sudden tightening of the cable, either in one of the loops or between the cable and the drum, and was severely injured. There is a conflict of testimony as to whether the plaintiff so acted upon the order of the foreman, or contrary to his direction.

The plaintiff's amended declaration contains ten counts, in all of which he alleges that his injuries were due to the sudden starting of the elevator mechanism while he was holding the cable.  In five of the counts he alleges that the cause of such sudden starting was the absence of a bushing in the loose pulley connected with the mechanism, and in the other five counts that it was caused by a worn bushing in said pulley; a bushing being a lining of a different metal let into the center of the loose pulley to receive the wear of the loose pulley revolving on the counter-shaft.  The plaintiff in said counts further alleges that the absence of a bushing or the presence of a worn bushing in said loose pulley caused the belt to run upon the tight pulley and so start the mechanism in operation.

The case was tried before a justice of the Superior Court and a jury and a verdict was rendered, for the plaintiff, for nine thousand dollars.

The case is before this court on the defendant's exceptions. to certain rulings and instructions of the justice presiding at the trial, and to the decision of said justice denying defendant's. motion for a new trial.

We are of the opinion that the motion for a new trial should have been granted. The plaintiff has alleged negligence in the defendant in certain particulars, *i. e.*, that it furnished an elevator for the plaintiff to work upon which was defective, as he has alleged in certain counts, by having a worn bushing in the loose pulley, or, as he has alleged in other counts, by having no bushing in said pulley, and that either one or the other of these defects was the proximate cause of the accident whereby he was injured. The plaintiff has failed to prove that either of said defects caused the sudden tightening of the cables by which he was injured, or that either of these defects. existed in the mechanism of the elevator. The rule is "that if the plaintiff alleges in the declaration negligence in certain particulars as the sole foundation of the action, negligence in these particulars must be proven to sustain the action." *McGinn* v. *U. S. Finishing Company*, 27 R. I. 58.

The axis upon which the drum turned was at a right angle to the counter-shaft. The power was transmitted from the main shaft by belts to the tight pulley on the counter-shaft, and from the counter-shaft to the axis, or shaft, of the drum by a worm and worm gear. Two belts were used to transmit the power from the main shaft to the tight pulley on the counter-shaft, and thence to the drum; one, the hoisting belt, a straight belt, which caused the counter-shaft to revolve in the same direction as the main shaft, and caused the drum to wind up the cable and raise the elevator; the other, the lowering belt, a crossed belt, which caused the counter-shaft to revolve in the opposite direction from the main shaft, and caused the drum to unwind the cable and permit the elevator to go down. Each of these belts, when not in use, was supported upon a loose

pulley of its own.  These loose pulleys were placed on either side of the tight pulley.  The location of each belt was controlled by a strong wrought-iron shifter finger attached to a shifter bar.  The shifter fingers were square frames through which the belts ran.  By an ingenious mechanism, as it was desired to raise or lower the elevator, the appropriate shifter bar with shifter finger attached drew the appropriate belt from its loose pulley onto the tight pulley, and when the operation was to be stopped, pushed the belt off the tight pulley and back upon its loose pulley, where it held it securely.  When the mechanism was in good order these shifter bars could not be actuated except by turning a wheel, known as the shifter wheel, which could only be turned by an operator; and as it was turned by the operator to the right or to the left, the hoisting belt or the lowering belt was brought upon the tight pulley.

It is perfectly plain from the testimony that, even if the bushing upon either or both loose pulleys was absent or was worn, the belt could not creep from the loose to the tight pulley as it was securely controlled by the shifter finger and could not pass onto the tight pulley till it was carried there by the shifter finger.  It is therefore certain that, in this elevator mechanism the lack of bushing in either or both of these loose pulleys, or the presence of a worn bushing in either or both of them, could not be the proximate cause of the starting of the mechanism, even if the starting of the mechanism could have produced the sudden tightening of the cable, which we will consider later. In our opinion, a careful reading of the transcript fails to show sufficient testimony to warrant the finding that the bushings were absent or defective, or that the shifter fingers or shifter bars or shifter wheel was in any way defective, or that this mechanism could start automatically.  We are also of the opinion that the testimony shows that the sudden tightening of the cable, which caused the injury to the plaintiff, was not caused by the starting of the elevator mechanism, and that it is mechanically impossible for it to have been so caused.

The worm and gear, by which the power was transmitted from the counter-shaft to the drum, also, by reason of the ratio

between the worm and its gear, reduced the speed, so that the speed of the drum was one forty-ninth the speed of the counter-shaft. The speed of the main shaft and the counter-shaft was constant, and the drum revolved once while the counter-shaft was revolving forty-nine times. The drum turned at the very slow rate of one revolution in twelve seconds. It was at this speed that the cable was wound onto and unwound from the drum, and this speed could not be accelerated. In view of this fact, which can not be disputed, the testimony of the plaintiff that the drum "started just like a shot. All at once I found my fingers tightened in," and later, speaking of the drum, "Well, it did turn. It went just like a shot; pulled me up," is not entitled to any credit. The two D'Arezzo cousins, called as witnesses for the plaintiff, testified that while they were holding the elevator-car in place with bars they fell backwards, and the elevator went up quickly five or six feet and then fell suddenly to the floor below. One of them, Guiseppe D'Arezzo, testified that they placed these bars under the elevator platform and were bearing their weight upon the bars when this happened. With the cable slack between the elevator-car and the drum, as it was at this time, the mechanism would have no more effect upon the movement of the car than it would have if the cable was entirely disconnected from the car. The testimony of these witnesses, that the car, with its load of iron, went up in the shaft five or six feet, with no force applied to it except the pressure of the two men upon the bars, can not be taken as true. Surely the elevator mechanism, with the slack cable between the car and the drum, could not have produced that effect. That the elevator-car fell suddenly to the ground floor there can be no doubt. This falling was entirely disconnected with any action of the mechanism. In the circumstances of the case, as shown by the testimony, this fall can only be ascribed to the releasing of the car from the jam which held it. The fall of the car quickly took up the slack in the cable and caught the plaintiff's hand and injured it. The plaintiff's declaration is entirely inconsistent with the facts of the case. In no view of the matter could the plaintiff be allowed to recover.

When he attempted to replace the cable upon the drum, he knew, as a man of ordinary intelligence, and from his experience about this elevator, that the cable had unwound because the elevator-car was stuck fast; that if the car was released before the cable became tight again, the car would fall and the cable would suddenly tighten, to the possible injury of anyone handling it.    He must be held to have assumed the risk with full knowledge of the danger.

Bearing upon the conclusion that the tightening of the cable was not due to any action of the mechanism, but to the falling of the car, is the testimony of witnesses for the defendant that certain of the plaintiff's witnesses admitted that the two D'Arezzos pried the elevator-car loose with their bars.    This testimony is denied by those who are said to have made the admission.    It is also in testimony that the plaintiff himself, while at the hospital, accused the D'Arezzos of being the cause of his injury through their carelessness.    The plaintiff denied that he made such statement; but it is significant, as bearing upon that denial, that, in the sole count of his original declaration filed in the case, the plaintiff makes no allegation of defective loose pulleys or of any defect in the hoisting mechanism, but alleges as the defendant's negligence "that said defendant, by its agents and servants, directed said plaintiff to hold the rope holding said elevator, so that said rope would wind evenly on the drum around which said rope was accustomed to be wound, and said defendant, by its agents and servants, directed to wit two other persons to hold a bar whereby said elevator was maintained in a stationary position while said rope was being wound evenly around said drum; that said defendant, by its agents and servants, and by those acting under the direction of said defendant, its agents and servants, so improperly discharged its duty to repair said elevator, that said bar slipped from the two men who were holding it and said elevator suddenly descended and said plaintiff, who was engaged as aforesaid in holding said rope and in seeing that said rope was wound evenly upon said drum had his, said plaintiff's, hands caught between said rope and said drum."

A demurrer to this declaration was sustained, and the plaintiff.then filed his amended declaration in ten counts, upon which the case was tried.

(2)    In this case the verdict of the jury has been approved by the justice presiding at the trial, and we are not unmindful of the rule approved by this court in *Wilcox* v. *Rhode Island Company*, 29 R. I. 292. This case is distinguished from *Wilcox* v. *Rhode Island Co.* The rule of that case is that, when the evidence is conflicting, the decision of the justice presiding at the trial, sustaining or setting aside the verdict of the jury, should have great persuasive force in appellate proceedings before this court. In the case at bar the jury's verdict is not based upon their conclusions on conflicting testimony, but upon an entire misconception of the facts of the case, and is given in a case where the declaration is unsupported by the testimony.

In this view of the case, this court would not be justified in sending it to another jury to be tried, but should enter judgment for the defendant. Before doing so, opportunity must be given to the plaintiff to show cause why such order should not be made.

The plaintiff to show cause, on July 5th, 1910, at 10 A. M., why judgment should not be entered for the defendant.

*William M. P. Bowen,* for plaintiff.

*William A. Morgan, Edwards and Angell,* for defendant.

*Seeber Edwards,* of counsel.